**In re Richard E. PRICE, d/b/a Price Exploration Company, Debtor.**

**Bankruptcy No. 86–02800.**

United States Bankruptcy Court,
N.D. Oklahoma.

Feb. 26, 1987.

Lance Stockwell, Tulsa, Okl., for creditor.

Thomas M. Atkinson, Tulsa, Okl., for debtor.

## ORDER

JAMES E. RYAN, Bankruptcy Judge.

On February 10, 1987, the Application To Require Debtor To Accept or Reject Executory Contract urged by Woolsey Petroleum Corporation (Creditor) and the Response of RICHARD E. PRICE, d/b/a PRICE EXPLORATION CO. (Debtor) thereto were heard after sufficient notice to all interested parties.

No testimony was offered; however, numerous references were made by counsel to the exhibits attached to Creditor's Application without any objection. At the conclusion of the hearing, a decision was recorded; however, the scope of the decision's content is in question by counsel. Therefore, and after reflection, it is considered that the Order of February 10, 1987 should be struck and is herein set aside.

This Order shall become the final Order of this Court and is intended as a resolution of Creditor's Application.

Upon the pleadings, exhibits and after review of the file and consideration of the applicable law, the following are the Findings of Fact, Conclusions of Law and Order, pursuant to Bankruptcy Rule 7052, to-wit:

### FINDINGS OF FACT

1. This is a "core" proceeding as defined in 28 U.S.C. § 157(b).

2. Debtor's principal business is the acquisition, development and operation of Oil and Gas Leases.

3. Pre-Petition, Debtor invested in an Oil and Gas Lease (Neilson) owned by Creditor, by approving various letters which constitute a Participation Agreement. The letter of January 10, 1984, at Page 4, Paragraph 12 modified Article VI B. and E. of the Operating Agreement which relate to "Subsequent Operations" on the # 1 Neilson.

4. After the # 1 Neilson was placed into production, the Debtor failed to pay his monthly (lease) operating expenses to Creditor, the approved Operator. Creditor, pursuant to the Operating Agreement, Articles VII B. and XV, has filed its lien upon the future proceeds due Debtor in the amount of $12,565.84 and intends to recoup the pre-Petition indebtedness from future production proceeds.

5. As the # 1 Neilson ceased to continue producing, Creditor has proposed to conduct "Subsequent Operations" by recompleting the well in a different formation. Debtor, pre-Petition, in the ordinary course of his business, not only accepted the pro-

posal but has consented to an additional interest in the well in the total sum of $7,275.93.

6. Creditor's Application is grounded upon the Participation Agreement, the letters, and the Operating Agreement being executory contracts. Albeit, Debtor's pre-Petition consent must be approved by this Court and Debtor must cure his default of $12,565.84 before he can assume the benefits of the recompletion proposal as well as pay an additional $7,275.93 for the reworking. Debtor does not challenge Creditor's conclusion that the Participation Agreement and Operating Agreement are executory in nature, but takes issue with the $12,565.84 pre-Petition debt being part of the cure amount that must be paid before Debtor could assume the benefits of the subsequent operations.

## CONCLUSIONS OF LAW

A. The Participation Agreement is composed of various letter agreements all of which are necessary to make up a complete offering which became an executed contract upon Debtor paying his share of the #1 Neilson. The letter between the parties of January 10, 1984 was the initial offer which was conditioned upon Debtor accepting the terms of the specimen Operating Agreement which was attached and modified by Paragraph 12 of the letter specifically relating to Subsequent Operations.

B. The Operating Agreement is divisible into numerous provisions which operate separate and independent of one another, particularly the Subsequent Operation provision (Sub. Opr.) The Sub. Opr. provision as modified provides that *upon* a proposal to recomplete an existing well a party *may* consent or forfeit his interest upon commencement of operation. Implicit in the Sub. Opr. provision is the obligation that the person proposing the recompletion is to give all owners a proposal which would describe the reason, the intended work, its anticipated results and the estimated costs. Upon receipt, an owner can knowledgeably consent or forfeit his interest upon and when the recompletion work is begun.

C. An executory contract, generally stated, must have bilateral obligations of such a nature that the failure to perform by either party results in a material breach which excuses performance by the other party. The Sub. Opr. provision in question places an obligation upon the person proposing the recompletion to give notice to the owners. However, there is no affirmative duty on an owner to perform any obligation other than pay money or forfeit; thus no executory contract.

D. As stated, an Operating Agreement is composed of separate and unrelated provisions which are enforceable as such. The pre-Petition failure by Debtor to pay his monthly operating expenses in the sum of $12,565.84 is not related to the Subsequent Operation provisions so as to be a sum that requires cure even if the Subsequent Operations provision was executory in nature—which it is not. The Operating Agreement provides Creditor a remedy—lien and recoupment.

## ORDER

THEREFORE, IT IS THE ORDER OF THIS COURT that Creditor's Application be denied.